CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY vs.
WILLIAM PFAENDER.

November 24, 1876—March 26, 1877.

St. Paul & Pacific Railroad Company—Tax on Earnings.—The act of March 2, 1865, (Sp. Laws 1865, c. 6,) entitled "An act to aid and facilitate the completion of the St. Paul & Pacific railroad and branches," applies to all the lines of railroad authorized to be built under the charter originally granted to the Minnesota & Pacific Railroad Company by the act of May 22, 1857.

Same—All its Lines to be Regarded as Belonging to it in 1865.—This act of 1865 having been passed, as appears upon its face, on the assumption and belief that the St. Paul & Pacific Railroad Company then owned and held all those lines of road, and the franchises thereto belonging, an acceptance of its provisions and benefits by that company estops it, and every company subsequently acquiring title through it to any portion of such lines, from disputing the correctness of such assumption.

Same—Exemption from other Taxation a Conditional Grant.—The exemption from all taxation and assessment therein contained was not simply a personal privilege conferred upon the company, but was in the nature of a conditional grant, appurtenant to its several lines of railroad, and charged with the perpetual burden of an annual payment of the specified sum therein provided, dating from the time when any portion of such lines, equal in extent to thirty miles, should be completed and in operation.

Same—Rate of Tax on Earnings, how Determined in Case of Division of Lines.— In case of a severance and division of such lines of road, and the franchises thereto appertaining, among different companies, reference must be had to the time when such first thirty miles of completed road were built and put in operation, in ascertaining and fixing the rate per cent. and amount of gross earnings each company is to pay during any given year as to its line of road.

Same—When first Thirty-mile Section is deemed to have been Completed.—In ascertaining the amount due from the company to the state, on account of the earnings of its road during any period embraced in its annual report, under the provisions of the act of March 2, 1865, reference must be had to the date of the passage of that act as the time when, for such purpose, the first thirty-mile section of completed road is deemed to have been completed and put into operation.

This was an action brought against the defendant, the state treasurer, for taking $150, the property of plaintiff; the purpose of the action being to determine the liability of plaintiff, as purchaser and owner of the line of railway formerly belonging to the St. Paul & Chicago Railway

Company, to the tax on gross earnings imposed by the statutes cited in the opinion. The case was submitted to the district court for Ramsey county, *Simons*, J., presiding, who ordered judgment for defendant, which was entered, and plaintiff appealed.

The line of the St. Paul & Chicago railway was one of those authorized to be built by the Minnesota & Pacific Railroad Company, whose franchises passed, in 1862, to the St. Paul & Pacific Railroad Company. Availing itself of the privilege granted by its charter, the latter company issued special stock in respect of certain of its lines, viz., the line between St. Paul and Watab, and that between St. Anthony and Breckenridge, (the only lines which it had attempted to construct,) and, in 1864, the holders of this stock became a distinct corporation, under the name of the First Division of the St. Paul & Pacific Railroad Company. A history of these proceedings, and a discussion of the charter under which they were effected, will be found in *First Div. St. Paul & Pacific R. Co.* v. *Parcher*, 14 Minn. 297. This latter company at once took possession of the lines forming such First Division, and the land grant appertaining thereto, and fully completed those lines. In 1864, when the agreement was made under which the special stock for the First Division lines was issued, no part of the St. Paul & Pacific lines had been completed, except the portion from St. Paul to Anoka, (being a part of the line between St. Paul and Watab,) a distance of not more than thirty miles; and, at the time of the passage of the act of March 2, 1865, quoted in the opinion, fifty miles of the lines of the St. Paul & Pacific Railroad Company had not been completed. The St. Paul & Pacific Railroad Company accepted the terms of the act of 1865, and the First Division company has annually paid the tax on its gross earnings required by the act. In 1867 the St. Paul & Pacific Railroad Company duly issued special stock in respect of its line of road from St. Paul to Winona, and thence to the state line, and,

on March 26, 1867, the holders of such stock organized as the St. Paul & Chicago Railway Company. This company completed the first thirty miles of its road after March, 1870, and completed its road to Winona, a distance of over 100 miles, prior to March 1, 1872, and to La Crescent, a distance of 128 miles, with the cars running thereon, prior to January 1, 1873. No part of this line was built by the St. Paul & Pacific company, nor had that company any control over or interest in it or its property or earnings. On January 3, 1872, the St. Paul & Chicago Railway Company sold its line to the plaintiff, which sale was confirmed by an act approved February 28, 1872, (Sp. Laws 1872, c. 93,) it being provided that, in respect of the line of road purchased, the plaintiff should be subject to all the duties and liabilities theretofore imposed, in respect thereof, upon the St. Paul & Pacific Railroad Company or the St. Paul & Chicago Railway Company. This act was duly accepted by plaintiff.

The plaintiff paid into the state treasury, in April, 1876, 2 per cent. of its gross earnings for the year 1875, and refused to pay any greater percentage thereon. The defendant claimed that, under the statutes cited in the opinion, the plaintiff became liable to a tax of 3 per cent. on its gross earnings for 1875.

*Bigelow, Flandrau & Clark*, for appellant, argued that, as the different lines of the St. Paul & Pacific Railroad Company had been separated for all other purposes, they were separate for purposes of taxation of earnings; that, if they were still an entirety for that purpose, the payment of the *per centum* on the earnings of the St. Paul & Chicago road could be enforced against the First Division road—which would be contrary to the manifest intention of the legislature; that, to ascertain the rate of tax on gross earnings on the lines of railroad of any of the corporations into which the St. Paul & Pacific Railroad Company has been divided, reference must be had to the date of completion of thirty miles.

of the lines of such corporation, without regard to the time of completion of thirty miles of the line of any other of the corporations into which the original company had been divided; that, at the time of the passage of the act of 1865, the First Division company had already been formed, and its lines severed from the St. Paul & Pacific Railroad Company, and that, in computing the amount of completed road which the St. Paul & Pacific Railroad Company had on March 2, 1865, or which that road, or the St. Paul & Chicago Railway Company—afterwards formed from it—had at any subsequent time, no part of the line of the First Division company should be taken into account; that the first thirty miles of the St. Paul & Chicago Railway Company was not completed till after March, 1870, and from that date the periods mentioned in the act of March 2, 1865, should be computed.

*Geo. P. Wilson,* Attorney General, for respondent.

CORNELL, J. It is conceded that the point presented for decision in this case depends entirely upon the true meaning and construction of the fourth and fifth provisos of section 1 of the act of March 2, 1865, entitled "An act to aid and facilitate the completion of the St. Paul & Pacific railroad and branches." Sp. Laws 1865, c. 6.

It is also admitted that these provisos were enacted as amendatory of section 18 of the original charter granted to the Minnesota & Pacific Railroad Company, May 22, 1857; (Laws 1857, Ex. Sess. c. 1;) and, if we understand aright the statement of plaintiff's counsel in regard to the action of the First Division company, under the statute of 1865, it is not seriously disputed that it was intended to apply to the same lines of railroad authorized to be built under such original charter and its amendments. Whether, however, we are correct in this, or not, is not very material, as it is clear, from its title, its express provisions, and the whole context of the statute, that it does so apply, and that the St. Paul & Pacific company is therein regarded and treated

as holding the ownership and control of all such lines of road, and the franchises pertaining thereto ; and, inasmuch as that company accepted the provisions of the statute and its benefits, neither it, nor any company subsequently acquiring title through it to any portion of such lines, is in a position to assert a different state of things than that assumed by the statute, upon the faith of which, apparently, its provisions were framed.

Section 18 aforesaid provides that, " in consideration of the grants, privileges, and franchises herein conferred on the said Minnesota & Pacific Railroad Company, the said company shall and will, on or before the first day of March in each year, pay into the treasury of the territory, or future state, 3 *per centum* of the gross earnings of the said railroad for the year ending on the last day of the preceding December, in lieu of all taxes and assessment whatever.  *  *  * The first payment shall be made on the first day of March next, after fifty miles of said railroad shall be completed ;  *  *  * and, in consideration of such annual payments, the said company shall be forever exempt from all assessments and taxes whatever  *  *  * upon all stock in the said Minnesota & Pacific Railroad Company, whether belonging to said company or to individuals, and upon all its franchises or estate, real, personal, or mixed, held by said company," as well as upon its congressional land grant, till the same should be sold and conveyed.  To secure the payment of this *per centum* of gross earnings a lien was declared, in favor of the state, upon all the railroad and other property, estate, and effects of the company, that should take precedence of all demands, decrees, and judgments against the company.

The only substantial changes effected by the act of 1865 relate to the time when the lands of the company should become taxable, the rate per cent. required to be paid annually upon the gross earnings, and the time when it should first take effect.  For the 3 per cent. required by the

original charter the act of 1865 substituted 1 per cent. for and during the first three years, 2 per cent. for the next seven, and 3 per cent. thereafter; and, instead of the first fifty miles of completed road, the first thirty miles of road completed and in operation was fixed upon as the event which was to determine the date of the first *per-centum* payment.

Whenever privileges and franchises are granted to a corporation in matters concerning and affecting public interests, such as an exemption from taxation, a strict construction against the corporation, and favorable to the public, must be adopted, in case the statute containing the grant gives rise to any reasonable doubt or uncertainty as to its meaning by reason of its ambiguity or otherwise. 2 Pars. Cont. 506, and note; 3 Id. 535, and note; *Charles River Bridge* v. *Warren Bridge*, 11 Peters, 420, 544; *Rice* v. *Railroad Co.*, 1 Black, 358, 380. So when, in a grant of this character, it is doubtful whether a particular provision therein, creating an obligation against the donee of the grant, is to be regarded as imposing a condition qualifying it, or not, such question should be resolved as the legislative intent may appear, not alone from the collocation or arrangement of the words, but upon the reason and sense of the thing as indicated by the entire context and subject-matter of the statute. 2 Pars. Cont. 526, 527. Applying these rules to the case in hand, there would seem to be but little difficulty in arriving at a correct conclusion as to the true meaning of the provisos under consideration.

It is claimed by plaintiff, and conceded by defendant, that, under the original charter, the company accepting its provisions had the power of effecting a division of its lines of road and franchises, so that several separate and distinct railroads might be created therefrom, under the exclusive ownership and control respectively of independent corporations possessed of like franchises; and that, in the exercise of this power, no restriction whatever was placed upon the

number of roads that might be so brought into existence, nor upon the length of either of such railroads. If the construction contended for by plaintiff is correct—that each such new corporation is exempt from all taxation in respect to its road, franchises, and property, and from the payment of any *per centum* of earnings, until thirty miles thereof are actually built and put in operation, provided that much of completed road had not been finished prior to the division—then, had the company so divided its lines of road into sections, each less than thirty miles, before any construction, it follows that, under the terms of the statute, nothing whatever would ever have accrued to the state on account of the *per-centum* obligation, although, in part-consideration thereof, it had parted with its power of taxation over the entire road, or lines of road, as originally constituted. It is apparent that no such contingency could have been contemplated by the legislature in granting the charter to the original company. By the terms of the section, as amended, the exemption from assessment and taxation was granted in consideration of the annual payment of the specified *per centum* of gross earnings, to commence as soon as, and whenever, the requisite amount of railroad was completed and in operation; and the obligation to make this annual payment rested upon the consideration, not only of such exemption, but the grants made to, and the privileges and franchises conferred upon, the company in respect to its entire road or lines of road. The obligation assumed by the state in making the grant, and that of the company in receiving it, to make the required payment in lieu and in full of all assessment and taxation, were, in a certain sense, mutual and reciprocal obligations; and it was obviously the intention of the statute that the grant of immunity from taxation should be treated and regarded as in the nature of a conditional one, charged with the perpetual burden of the annual payment therein provided, and which was to commence whenever and as soon as any portion or portions of

the road to which the grant applied, amounting in all to thirty miles, should be completed and put in operation.   As this immunity was not simply a personal privilege conferred upon the original company, but a right appurtenant to its lines of road, (*First Div. St. Paul & Pacific R. Co.* v. *Parcher*, 14 Minn. 297, 329, 330,) it follows that the condition thereto annexed always accompanied it as to every part of the road, so that any company, in acquiring any portion thereof, with the franchises and immunities appertaining thereto, took it subject to the condition and burdened with the charge.   It follows, from these views, that the plaintiff company became liable to pay 3 per cent. of its yearly gross earnings from and after the expiration of ten years, computed from the time when the first thirty miles of the original lines of road were in fact completed and put in operation.   By what company or companies this was done is a matter of no moment as affects the question under consideration.   If, as the fact is claimed to be in this case, the expiration of this ten-year period does not coincide with the commencement of the fiscal year embraced in its annual account to the state treasurer, the company will be required to pay 2 per cent. of its gross earnings accruing during such fiscal year prior to the expiration of such period, and 3 per cent. upon that portion thereof accruing thereafter, and its account should be rendered accordingly.

Judgment affirmed.

After the filing of the foregoing opinion a further argument was applied for, and had, upon the question whether the ten-year period in the act of 1865 was to be computed from the completion of the first thirty miles of the First Division company, in November, 1864, or from March 2, 1865, the date of the passage of the act; and afterwards, and on March 26, 1877, the following opinion was delivered on this point:

Cornell, J.   Upon the former argument, upon the stipulated facts presented by the paper book then before us,

it did not definitely appear when the first thirty-mile section of road authorized to be built under the original charter of the Minnesota & Pacific Railroad Company was completed and put into operation, and hence the court did not consider the point now presented as then properly before it for adjudication.   Upon this application, however, for a further argument, it is expressly conceded, as an admitted fact in the case, that said section of road was completed and put into operation in November, 1864, and we are asked to determine whether, in computing the ten-year period, at the expiration of which the 3 *per centum* clause of the act of March 2, 1865, became operative, reference is to be had to the time when such thirty-mile section was, in fact, completed and put into operation, or to the date of the passage of that act—in other words, whether the act is to have a retroactive or prospective effect.   As it is a matter of public importance that this question between the company and the state, affecting as it does the revenues of the latter, should be definitely settled, and as it may very properly be raised in this case, it is deemed best to entertain it upon the facts as now admitted, and determine it.

By its terms, the act of March 2, 1865, took effect upon its passage.   As fifty miles of road had not then been completed, the obligation to pay a percentage of earnings, imposed by section 18 of the original charter, had not then become operative as respects any portion of the lines to which it was attached.   Presumably no account of earnings had ever been kept, nor any abstracts furnished under the provisions of this section, and hence no legal *data* existed from which the earnings of the road, if any, prior to the passage of the act, could be ascertained.   The act of 1865 made no provision for ascertaining the amount of such previously-acquired earnings, as presumably would have been the case had the legislature intended the collection of any percentage thereon from the company.   Instead of this, the act simply provided that an accurate account of the

earnings of the road should be thereafter kept by the company, and an abstract thereof furnished annually, on or before the 1st day of February in each year, for the year last preceding, from which the amount due the state on account of the earnings for such year was to be ascertained. The first of such abstracts so required to be furnished was to be made on or before February 1, 1866, and it could only include the earnings of the preceding year, acquired after the passage of the act, because, under its provisions, it was only as to such that the company was required to keep the account from which alone the abstract was to be made. As respects the question, therefore, under consideration, the statute is clearly prospective in its operation. Inasmuch as the requisite amount of road had already been completed and put into operation at the time of the passage of the act, which, by its terms, entitled the state to a percentage on the earnings, the obligation of the company in respect to such percentage became operative from and after that date. For the purpose, therefore, of ascertaining what amount is due the state on account of earnings acquired during any given year, the first thirty-mile section of completed road must be deemed to have been completed and put in operation as of the date of the passage of the act. The ten-year period, upon the expiration of which the 3 *per centum* clause became operative, must be computed from March 2, 1865. As respects the earnings during the year 1875, and covered by the abstract which was required to be furnished in February, 1876, 2 per cent. should be charged upon that portion earned prior to March 2, 1875, and 3 per cent. thereafter.