STATE OF MINNESOTA *vs.* NORTHERN PACIFIC RAILROAD COMPANY. | 36   207
                                                              | 85   150

## December 17, 1886.

**Railroad Companies—Successors to Forfeited Franchises—Percentage of Earnings in Lieu of Taxes.**—A line of railroad from Brainerd to Watab, formerly a part of the chartered line of the St. Paul & Pacific Railroad Company, was constructed by the Western Railroad Company of Minnesota in 1877–78, under Sp. Laws 1877, *c.* 201, by force of which act the forfeited franchises, privileges, and immunities of the former corporation, appertaining to this line of road, were transferred to the latter company. *Held,* that the same obligation, as respects the percentage of earnings to be paid to the state in lieu of taxation, attended the franchises and immunities thus transferred, as the original company would have been subject to if it had constructed this line of road. Hence, pursuant to the provisions of Sp. Laws 1865, *c.* 6, this defendant, operating this section of road under lease from the Western Railroad Company, was liable to pay to the state, for the year 1885, *three* per cent. of the gross earnings therefrom.

**Same—Graduation of Percentage under Sp. Laws 1873, c. 111.** The percentage required to be paid to the state by a railroad corporation accepting the provisions of Sp. Laws 1873, *c.* 111, (prescribing the percentage of the earnings to be paid by the St. Paul, Stillwater & Taylor's Falls Railroad Company,) pursuant to section 2 of that act, is to be graduated with reference to the time of the completion of 30 miles of its own line of road, and not with reference to the fixed date named in that act with respect to the St. Paul, Stillwater & Taylor's Falls Railroad Company. This construction, applied to the line from Watab to Minneapolis, operated by this defendant, subjects it to the payment of 1 per cent. of its gross earnings.

Cross appeals from an order of the district court for Ramsey county, *Brill, J.,* presiding, sustaining a demurrer to the answer, but determining that the plaintiff was not entitled to recover all that was claimed in the complaint.

*William J. Hahn,* Attorney General, for plaintiff.

*W. P. Clough,* for defendant.

DICKINSON, J.  This is an action to recover a percentage of the gross earnings of the defendant, for the year 1885, from two different

sections of the line of railroad operated by it. The circumstances affecting the obligation of the defendant are different in respect to the two sections of road referred to, and will be separately considered.

The line extending from Brainerd to Watab was a part of the line over which the Minnesota & Pacific Railroad Company was, by the act of 1857, (Extra Sess. 1857, c. 1,) and by subsequent enactments, authorized to construct its road. This not having been constructed by that company, nor by its successor, the St. Paul & Pacific Railroad Company, chapter 201 of the Special Laws of 1877 was enacted, declaring the rights, privileges, franchises, and grants of that corporation, appertaining to this line, to be forfeited to the state, without merger or extinguishment, and that the same were continued and conferred as in that act provided. Upon conditions not important to be here mentioned, it further provided that (§ 5) "any company or corporation now organized, or that may hereafter organize, having authority from this state to build, maintain, and operate a line of railroad within or through the state, may succeed to and acquire the right to complete, own, maintain, and operate" this line, "by filing with the governor a written notice of its desire and intention, under and subject to the provisions of this act, to complete" the same. Section 7 provides that "any company acting under and pursuant to the provisions of this act shall become entitled to and invested with all and singular the rights, privileges, immunities, franchises, lands, and property appertaining to the portion of road it shall complete, which were formerly held by, or which formerly belonged to, the St. Paul & Pacific Railroad Company, or which were formerly granted to the St. Paul & Pacific Railroad Company."

The Western Railroad Company of Minnesota, which had theretofore been created, under the general laws of the state, for the construction of a road from Brainerd to Sauk Rapids, and thence to Minneapolis and beyond, accepted and availed itself of the provisions of this act of 1877, in the manner therein designated, and, under and by virtue of that act, constructed this line, completing it before the first day of May, 1878. That corporation then leased the road to this defendant, which has ever since operated it.

By chapter 6 of the Special Laws of 1865, modifying the provisions

of the original charter of 1857, above referred to, the St. Paul & Pacific Railroad Company was declared to be forever exempt from assessment and taxation, in consideration of the payment to the state yearly of 1 per cent. of the gross earnings of the railroad during the first three years after 30 miles of the same should be completed and in operation; 2 per cent. during the next seven years; and 3 per cent. from and after the expiration of 10 years from the completion of 30 miles of road.

The controversy is as to whether the percentage to be paid in accordance with the act of 1865, in respect to this line of road, is to be determined with regard to the time when the St. Paul & Pacific Railroad Company completed and put in operation 30 miles of its road, or system of roads, or only with regard to the time of the construction of this particular line of road, or of 30 miles of the same, by the Western Railroad Company. If the former is the rule to be applied, the defendant is chargeable with 3 per cent. of its earnings for the year 1885; if the latter rule is applied, it is chargeable with only 2 per cent.

If this line of road had been constructed and operated by the St. Paul & Pacific Railroad Company, or by any company deriving from that corporation, and under the peculiar provisions of its charter, a separate corporate existence, there can be no doubt that, pursuant to the provisions of the act of 1865, it would have been required to pay 3 per cent. of its gross earnings for the year 1885. After the construction and putting in operation of 30 miles of road composing any part of the entire line or system of the St. Paul & Pacific Railroad Company, the rate per centum prescribed by the act of 1865 became at once applicable to the entire system, so far at least as the same was constructed and operated by that company, or by any corporation deriving its existence from it. This was decided in *Chicago, Mil. & St. Paul Ry. Co.* v. *Pfaender*, 23 Minn. 217.

The rights and obligations of the Western Railroad Company, in respect to this line, were such as were conferred and imposed by the act of 1877. When that act was passed, the time had already become fixed, by the construction of 30 miles of the St. Paul & Pacific road, from which the percentage prescribed by the act of 1865 was

v.36m—14

to be computed; and the state had become entitled to receive, and the St. Paul & Pacific Company had become obligated to pay, the percentage, so determined, of the earnings, not only of so much of the whole road or system as had then been constructed, but also of what might thereafter be constructed under the charter of that company. That obligation of the corporation towards the state on the one hand, and on the other the franchises, grants, and privileges which the corporation had received and enjoyed from the state, were parts of an entire plan embodied in the charter and legislation above referred to. The grant was subject to the prescribed obligation. The one was a consideration for the other. Not only was this the situation when the act of 1877 was passed, but, by the decision of this court in *Chicago, Mil. & St. Paul Ry. Co.* v. *Pfaender, supra,* filed in November, 1876, this obligation had been declared, and was, as must be presumed, known to the legislature. The act of 1877 is to be construed in the light of these circumstances.

The question, then, is whether, by that act, the legislature intended to confer upon any corporation which should construct and put in operation this line of road, all franchises, grants, and privileges which the St. Paul & Pacific Company had before enjoyed, discharged of its reciprocal obligations towards the state; or whether the obligation was to attend the privileges thus transferred. In our opinion, the act can only be reasonably construed as transferring to the succeeding corporation the rights and franchises of the St. Paul & Pacific Company, with respect to this line of road, as the same had been enjoyed by that company, and not freed from the attendant obligations.

Among the "immunities" and "privileges" which had been enjoyed by the St. Paul & Pacific Company, and to which such succeeding corporation was, by the terms of the act, to become entitled, was its exemption from ordinary assessment and taxation. But this exemption had been granted to and enjoyed by the original company only in consideration of its paying to the state, in place thereof, a prescribed percentage of its earnings; and it cannot reasonably be supposed that the legislature would, if, indeed, it could, have granted or continued such an exemption, unless coupled with that or some

like obligation. If the act of 1877 were to be construed as transfer-ring to such corporation as might comply with its provisions the privileges and immunities of the former corporation, disconnected from this duty, it might well have come to pass that, so far as appertained to this line of road, the corporation constructing and operating it, with all its property, would have been wholly exempt, both from direct taxation and from any charge in the nature of taxation. This would have been the result if we suppose a corporation subject to the general law of the state as respects taxation to have accepted the provisions of this act, and to have constructed and maintained the road. It would not, as respects this property, have been subject to ordinary assessment and taxation ; for exemption therefrom was one of the expressly granted "immunities" of the former corporation, which the succeeding corporation would have acquired under this act; and, by the terms of our hypothesis, such succeeding corporation would not be chargeable with a percentage of its gross earnings. Whether, in fact, the Western Railroad Company was or was not subject to the general tax law of the state in 1877 does not appear, but that is not important for the purpose of construing this act so as to arrive at the intention of the legislature; for "any company" organized under the general law of the state, and subject to the general tax law, might have availed itself of the privileges of this act, and have constructed the road.

2. The second branch of the case relates to the line of road from Watab to Minneapolis. This was constructed by the Western Railroad Company of Minnesota as a part of its line, and was completed about July, 1884. Prior to that year 30 miles in length of the same had not been constructed. At about the time of the completion of this line it was leased by the Western Railroad Company (then known as the St. Paul & Northern Pacific Railway Company) to this defendant, the Northern Pacific Railroad Company, by which corporation it has since been operated. On or about the 18th day of September, 1884, the St. Paul & Northern Pacific Railway Company, in accordance with the provisions of section 2 of chapter 111 of the Special Laws of 1873, (Gen. St. 1878, *c.* 11, § 129,) accepted and became subject to that law as to this line of road. By the terms of section

1 of that act the St. Paul, Stillwater & Taylor's Falls Railroad Company was to pay to the state, on or before the first day of March of each year, 1 per cent. of its gross earnings, for three years from and after January 1, 1872; 2 per cent. for the seven years next thereafter; and 3 per cent. "from and after the expiration of ten years from the said first day of January, 1872." Section 2, above referred to, provides that "any railroad company, owning or operating, or which may hereafter own or operate, any line or lines of railroad in this state, may, by resolution of its board of directors, attested by its secretary, and filed with the secretary of state, accept and become subject to the provisions of this act; and, in such case, the payment of such percentage in lieu of taxes, in accordance therewith, shall commence from and after the first day of March next after the completion of thirty miles of such line hereafter built, or of the entire line, if the same shall be less than thirty miles in length."

It is claimed, on the part of the state, that, by accepting and becoming subject "to the provisions of this act," the railroad company, as to this line, became subject at once to the payment of the same percentage of its earnings as the St. Paul, Stillwater & Taylor's Falls Railroad Company was *then* required to pay; that 10 years having already expired since "the said first day of January, 1872," 3 per cent. of the gross earnings was chargeable without regard to the time when this line of road was constructed. This construction of the act cannot be sustained. "The provisions of this act," which may be accepted by any railroad company, comprise, not merely such as are found in section 1, but that in section 2, above recited. The words "thirty miles of *such* line," refer to the "line or lines" mentioned in the first part of the same section,—that is, to the line of "any railroad company" which may accept the provisions of the act,—and not to the line of the St. Paul, Stillwater & Taylor's Falls Railroad Company, which company is not named in that section. We think the purpose is clearly expressed to subject any railroad company which, being within the terms of the act, may accept its provisions, to the payment yearly of a percentage graduated with reference to the time of the completion of the first 30 miles of its own line of road; 1 per cent. being payable during the first three years after that event,

2 per cent. during the next seven years, and 3 per cent. thereafter. This is in accordance with a policy which has been so generally adopted with respect to the railroad system of the state, and had been when the act of 1873 was passed, that it affords reason in support of the construction which is by far the most natural from the letter of the act itself.

In making special provision as to a particular existing corporation, as the St. Paul, Stillwater & Taylor's Falls Company, the legislature, being informed in respect to the progress of construction, could fix definitely the date from which the prescribed percentage should be computed, and thus accomplish, as to that road, the general purpose of charging a percentage graduated with reference to the commencement of the enterprise. To accomplish a like purpose as to railroads generally, and by an enactment general in its nature, it was necessary to provide for the commencement of the percentage with reference to the unknown time when construction to the required extent should be completed. Obvious reasons led to the adoption of the policy of graduating the percentage to be paid by a railroad company with regard to the beginning of that particular enterprise. It would be more difficult to assign a reason which could have induced the legislature to provide for making the fixed date when such a graduation of percentage should commence as to a particular designated road, applicable, without change of such date, to all roads which might at any time thereafter be constructed.

It is further claimed by the state that at least the defendant should be charged with 2 per cent. in respect to this line, because it and the line from Brainerd to Watab, completed in 1878, were constructed by the same company, and are parts of a continuous and entire line of road. But, for the purposes of the application of the act of 1873, we consider that those two sections of road must be deemed to be distinct and separate lines. In the first part of this opinion, reasons have been stated for holding that the line from Brainerd to Watab is, for the purpose of the commutation of the percentage to be paid, to be treated as a part of the line of the St. Paul & Pacific Company, and not as though it had been constructed under the charter of the Western Railroad Company. The same reasons now forbid that the con-

struction of that line should be deemed to have been the "completion of thirty miles" of a different line, of which that from Watab to Minneapolis is a constituent part, so as to affect the rate of percentage now required to be paid in respect to the latter line under the act of 1873. The franchises pertaining to the one road are those originally granted to the Minnesota & Pacific Company in 1857, and subsequently transferred to the St. Paul & Pacific Company; and the taxation of that line is controlled by the special enactment relating to that corporation. The franchises of the other road are such as were acquired by the Western Railroad Company by its organization under the general law, and it is taxed in accordance with the provisions of the act of 1873. Our conclusion is that, pursuant to the terms of that act, this line is chargeable yearly with only 1 per cent. of its gross earnings during the three years next after the date of the completion of 30 miles of the line, not regarding that line of road constructed under the charter of the St. Paul & Pacific Company.

Upon both branches of the case our opinion is in accordance with that of the learned judge whose decision is here in review, and the order appealed from is affirmed.