[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 104 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 105 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 106 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 107 
I cannot agree with the defendant's counsel, that it was necessary to the incorporation of the Schenectady and Saratoga Plank Road Company, that the whole amount of capital stock should be subscribed before the filing of the articles of association. The first section of the act under which the company was organized, (Sess. Laws of 1847, p. 216,) permits the subscribers to elect directors, and to subscribe and file the articles of association, "when stock to at least five hundred dollars for every mile of the road so intended to be built shall be in good faith subscribed, and five per cent paid thereon," c. This has been so adjudged in this state, in the case of theHamilton and Deansville Plank Road Co. v. Rice, (7 Barb. 166.) A subscription of the whole amount of stock has never been held a condition precedent to a legal corporate existence, except when it was made so by the act of incorporation. (6 Pick. 23; 9id. 187; 10 id. 142; 1 Mood. Malk. 151; 4 Eng. L. andEq. 455.) That stock was subscribed, to the extent required by the statute, and that all the other preliminary steps were taken, was established in the mode required by the second section, viz. by an affidavit of three of the directors of the company, of whom the defendant was one.
Nor was it necessary that the whole amount of stock should have been subscribed, before calls of installments could be made. The act not only makes no such requirement, but it expressly permits (§ 39,) the directors of any company incorporated, c. to require payment of the sums subscribed to the capital stock, at such times and in such proportions as they shall see fit. It *Page 108 
first authorizes an incorporation to take place in subscribing a certain amount, (§§ 1, 2,) and then in section 39 authorizes the directors to require payment of the "sums subscribed." The decisions, therefore, in the courts of Massachusetts, (6 Pick. 23; 9 id. 187; 10 id. 142; 6 Cushing, 50,) relied on by the defendant's counsel, are entirely inapplicable. The same amount of stock subscriptions which is necessary to the organization of the company, is all that is requisite, as preliminary to a call for its payment by instalments.
The court rejected the offer of the defendant to prove that no notice had been given of the first election of directors. I think this was properly rejected, on the ground that the defendant could not avail himself of a neglect to give notice to any other stockholder. The defendant himself was present at that meeting, aud voted, and was elected a director. He has not suffered by an omission to serve notice, and he is not in a situation to object as to others.
I see no reason why the liability of the defendant on his contract was not full and complete. He cannot avail himself of the objection that it was without consideration. He made the promise to pay, not as a gratuity, but in consideration of the shares of stock he was to receive and his anticipated dividends. This subject is fully examined in the Hamilton and DeansvillePlank Road Co. v. Rice, (7 Barb. 164.) Nor was it any defense that the defendant had sold his stock to Boyd. That did not release him from his express promise to pay the plaintiff.
It is claimed that the building of the branch road, without the consent of the defendant, released him from his subscription and that the evidence on this point should have been admitted. The general act of 1847, under which the corporation was organized, reserved to the legislature the right at any time to alter, repeal or amend that act. That power was exercised in 1849, (Sess. Laws of 1849, p. 374,) by an act amending the act of 1847 in several particulars, and among others, conferring the right upon the directors of any plank road company, with the written consent of persons owning two-thirds of the stock, and with the written *Page 109 
consent of the majority of the inspectors, to construct branches to their main line, or extend their main line or change the route of their road or any part thereof. The defendant subscribed to stock under the original act, subject to the contingency that additional powers might be conferred or other changes made by an amendment of the law, and he stands now on the same footing as if his subscription had been made after the amendment of 1849. It was not offered to be proved that the building of the branch road was prejudicial to the defendant's interests, or to those of the corporation; nor was it pretended that there had been any fraud or breach of trust on the part of the directors of the corporation. The defendant's counsel seems to rely with much confidence on the case of the Hartford and New Haven RailroadCompany v. Croswell, (5 Hill, 383;) but that was an extreme case, and the change was one by which the nature of the business to be transacted by the company was radically changed, and the decision was put expressly upon the ground that the change made after subscription was plainly prejudicial to the interests of the stockholders. It is not certainly every extension of the main line, or construction of a branch, or change of route subsequent to subscription for stock, that will discharge a stockholder from his express agreement to pay for his stock. The change made may be unimportant, or may be, and in most cases doubtless is, beneficial to the stockholders. And where it is not claimed to be prejudicial, and the character of the contract is not altered, there can certainly be no reason for allowing a dissatisfied stockholder to take advantage of it. None of the cases recognize the right of a stockholder to complain where he has not been injured. (2 Watts Serg. 156; 2 Penn. R. 466; 10 Barb. 277; 2 Russ. Mylne, 470; 8 Mass. 270; 10 id. 385; 15Pick. 363; 1 N. Hamp. 44; 2 Am. Law Jour. N.S. No. 11, forMay, 1850.) The question was carefully considered in 10 Barb. 277, and in the recent case of White v. The Syr. and UticaRailroad Co., 14 Barb. 559.)
The case before us is also plainly distinguishable from that of the Hartford and New Haven Railroad Co. v. Croswell, and *Page 110 
the Massachusetts cases relied on by the defendants' counsel, in the controlling feature, that in these cases the legislature had not reserved the right to alter the charter of the company. In such case the assent of those interested was necessary to changes so great as were proposed.
I think none of the exceptions of the defendant were well taken, and that the judgment of the supreme court should be affirmed.