THE PEOPLE, *ex rel.* John McConvill, and the said JOHN McCONVILL, *vs.* ISAAC HILLS.

The act of the legislature, passed March 24, 1865, entitled "An act to amend chapter 389 of the Laws of 1851," is not unconstitutional and void as being intended to modify and impair the contract between the city of Rochester and the Rochester and Genesee Valley Railroad Company, by which the city became a stockholder in the railroad company upon the acceptance of its subscription by the company, and therefore included in the section of the constitution of the United States which prohibits any state from passing any law impairing the obligation of contracts.

The act of 1851, (*Laws of* 1851, *ch.* 181,) enabled the city of Rochester to subscribe for and hold stock in the Rochester and Genesee Valley Railroad Company, to an amount not exceeding $300,000; and in case the company should elect to receive their subscription, the common council was authorized to nominate and appoint one director of said company for every $75,000 of capital stock of the company held by the city. The act of March 24, 1865, amended the act of 1851, so as to authorize the common council of Rochester to nominate and appoint one director of the railroad company for every $42,855.5-7ths of capital stock held by the city; the effect of which was to give to the city of Rochester the right to choose seven, instead of four, directors of the company. *Held* that the act of 1865 was not void as impairing or having a tendency to impair the obligation of a contract.

*Held,* also, that under the section of the Revised Statutes declaring that the charters of corporations thereafter to be granted by the legislature "shall be subject to alteration, suspension and repeal, in the discretion of the legislature," and the corresponding provision of the general railroad act, the legislature had the power to make the change specified, in the charter of the railroad company.

*Held, further,* that the power thus reserved was intended to be continuous, and was not limited to a single occasion, or any number of occasions, of its exercise, and then to become or be deemed exhausted.

The act of the legislature, of March 24, 1865, entitled "An act to amend chapter 389 of the Laws of 1851," is not void for non-compliance with section 16 of article 3 of the constitution of this state, which declares that "no private or local bill, which may be passed by the legislature, shall embrace more than one subject, and that shall be expressed in the title." And this, notwithstanding the statement in the title fails to indicate the nature of the amendment intended to be made, or what section or portion of the act to be amended is intended to be affected.

The constitutional provision does not require that the titles of acts of the legislature shall contain the substance of their enactments. If the titles are sufficient to put the legislature and persons interested upon inquiry, that is all the constitution requires.

APPEAL from a judgment rendered at a special term. The action was brought to try the defendant's title to the offices of secretary and treasurer of the Rochester and Genesee Valley Railroad Company. The relator claimed the same offices, by virtue of an appointment alleged to have been made in December, 1865, by the seven directors who were elected by the common council of the city of Rochester, in 1865. The relator alleged in his complaint, that he had demanded of the defendant the books and papers and money belonging to the office and corporation, and in his possession, and that he refused to deliver the same; and that the defendant had without any legal warrant, authority or right whatever, since the 18th day of December, 1865, held, used and exercised the said office of secretary and treasurer, and still did hold, use and exercise the same, at the city of Rochester, and had without any legal warrant or authority, claimed and received and enjoyed all the rights, franchises, fees and emoluments belonging or appertaining to the said

office; which rights and franchises the defendant had usurped and unlawfully held and exercised, and still did unlawfully hold and exercise within the state of New York, to the damage of the people thereof.

The prayer was for a judgment declaring that the defendant had usurped and unlawfully held and exercised the said office of secretary and treasurer, and the rights and franchises appertaining thereto, since the 18th day of December, 1865, and still does so unlawfully hold and exercise the same, and that he be ousted, and removed therefrom; and for a further judgment that the relator was entitled to the said office, and the rights, franchises and fees thereof, and had been so entitled since the said 18th day of December, 1865, &c.

The defendant put in an answer alleging that he was duly appointed by the board of directors of the railroad company, secretary and treasurer of the company, on the 12th day of June, 1862, to serve during the pleasure of the board; and that by virtue of said appointment he had ever since continued to act, and still did lawfully act as such secretary and treasurer, never having been removed from either of those offices; and that therefore he did, as he lawfully might, refuse to deliver to the relator the books, papers and money, or any part thereof, belonging to the said corporation.

The justice before whom the action was tried found the following facts, viz: That the Rochester and Genesee Valley Railroad was a corporation, organized under and by virtue of the general railroad act, passed April 2, 1850, and that its articles of association were filed in the office of the secretary of state, July 10, 1851. That the whole amount of stock subscribed for the said corporation was nine thousand seven hundred and seventy-five shares, of one hundred dollars each. That the total amount of paid stock, and for which certificates have been issued, is five thousand five hundred and fifty-two shares of one hundred dollars each. That on the 15th day of June, 1852, the mayor of the city of Rochester, by authority and in behalf of the common council of said

city, and by virtue of the act mentioned in the answer, passed July 3, 1851, and in accordance with the terms and conditions mentioned in said act, subscribed for $300,000 of the stock of said corporation, being three thousand shares of $100 each. That thereupon, and on the same day, the said railroad company, by resolution of its board of directors, and in view of the terms and conditions of said act, elected to receive said subscription. That said stock was fully paid in, and certificates issued therefor, and that the said city has been, ever since, and was at the commencement of this action the holder and owner thereof. That thereafter and until the annual election of directors in 1865, the said city, by its common council, at the time of such annual election, and in accordance with the terms of said act, elected four out of the thirteen directors, and that the remaining stockholders of said company elected nine out of said thirteen, without interference from said city. That on the 12th of June, 1862, the defendant was regularly elected by the then board of directors, secretary and treasurer of said company. That by the by-laws of said company the secretary and treasurer thereof hold their offices during the pleasure of the board of directors. That on the 8th of June, 1865, at the regular annual meeting of the stockholders, the stockholders of said company met and elected nine persons (naming them) as directors for the ensuing year. That on the same day the common council of said city, by virtue of the act of March 24, 1865, assumed to elect seven other persons (naming them) as directors of said company. That the said seven persons, assuming to act as such directors, thereafter served upon Charles G. Miller, president of said company, a written request, subscribed by them, calling upon him to call a meeting of the board of directors of said company, which he refused to do. That thereupon said seven persons executed a certain instrument calling a meeting of said board of directors, for December 5, 1865, and that said call was, a reasonable time before said 5th of December, served upon six of the nine directors elected by the stock-

holders. That in pursuance of such call, the seven persons signing it, and no others, met and organized as a board of directors, and assumed to elect the relator secretary and treasurer, in place of the defendant. That except as above set forth, the defendant has never been removed from the office of secretary and treasurer, or either of them.

And the justice further found and decided, as matter of law, that the act of March 24, 1865, authorizing the city of Rochester to elect seven directors of said railroad company, instead of four, is unconstitutional and void. That the seven persons whom the common council assumed to elect as such directors, were not thereby elected as such. That all acts done by them in such capacity, including the assumed election of the relator as secretary and treasurer, are void. That the relator is not entitled to said offices, or either of them. But that the defendant is entitled to said offices, and to judgment for the dismissal of the complaint, with costs.

*Wm. F. Cogswell,* for the appellants.

*Theo. Bacon,* for the respondent.

*By the Court,* WELLES, J. The only question involved in this case is the constitutional validity of the act of the legislature passed March 24, 1865, entitled " An act to amend chapter three hundred and eighty-nine of the Laws of 1851." (*Sess. Laws of* 1851, *ch.* 181, *pp.* 303, 304.)

Chapter 389 of the Laws of 1851 is entitled "An act to amend an act entitled 'an act to amend and consolidate the several acts relating to the city of Rochester,' passed April 10, 1850." (*Sess. L. of* 1851, *pp.* 757 *to* 770.) Sections 285 to 292 inclusive, of the act of 1851, provide for enabling the city of Rochester to subscribe for and hold stock in the Rochester and Genesee Valley Railrod Company to an amount not exceeding $300,000. The 290th section is as follows :

"The common council of the city of Rochester, in case the said 'the Rochester and Genesee Valley Railroad Company' elect to receive their subscription, shall have power to nominate and appoint one director of said company for every seventy-five thousand dollars of capital stock held by said city at the time of each election of directors of said company, but said city shall have no voice in the election of the remaining directors."

The act of 1865 referred to, amends the last mentioned and recited section of the act of 1851, so as to make it read as follows: "The common council of the city of Rochester shall have the power to nominate and appoint one director of the Rochester and Genesee Valley Railroad Company for every forty-two thousand eight hundred and fifty-five dollars and five sevenths of a dollar of capital stock of the said railroad company held by the said city at the time of each election of directors of the said railroad company."

The railroad company was incorporated and organized in June, 1851, under the general railroad act of April 2, 1850. (*Sess. Laws of that year, ch.* 140, *p.* 211.) By the first section of that act, associations formed in accordance with its provisions, are declared to be corporations, possessing the powers and privileges granted to corporations, and to be subject to the provisions contained in title three of chapter eighteen of the first part of the Revised Statutes, excepting the provisions contained in the seventh section of said title. The eighth section of the title of the Revised Statutes referred to is as follows: "The charter of every corporation that shall hereafter be granted by the legislature, shall be subject to alteration, suspension and repeal in the discretion of the legislature." (1 *R. S.* 600. 1 *N. Y. Stat. at Large,* 557.)

The validity of the act of 1865 above quoted, and under which the relator claims to have been chosen to the offices of secretary and treasurer of the Rochester and Genesee Valley Railroad Company, is challenged as being intended to modify and impair the contract between the city of Rochester and

the railroad company, by which the former became a stockholder in the company upon the acceptance of its subscription by the latter, and therefore was included in the prohibition of section 10 of article 1 of the constitution of the United States, which, among other things, prohibits any state from passing any law impairing the obligation of contracts.

The corporation of the city of Rochester, under the authority of sections 285 to 292 inclusive, of chapter 389 of the Laws of 1851, by subscribing to the stock of the railroad company, and the acceptance of such subscription by the company, became co-corporators in the corporation of the railroad company, upon equal terms, in all respects, with the other stockholders, with the exception that it had the absolute right to choose, by its common council, one of the directors of the railroad company for every $75,000 of the stock of the company held by the city at the time of each election of directors of the company, and without the right to participate in the choice of any of the other directors. The city subscribed and paid for $300,000 of stock and still hold the same, and thus became entitled to choose four of the directors of the company. Without the authority of the legislature, the city would not have had the right to become such stockholder. Upon the acceptance by the company of the subscription by the city, all the stockholders, including the city, were the corporators of the railroad company, with equal powers and liabilities, with the exception mentioned. The provisions of sections 285 to 292 of chapter 389 of the Laws of 1851, also became a part of the articles of association of the railroad company, for the reason that the city had no rightful power to make, or the company to receive, the subscription of the former, (which, as the facts show, now constitute a majority of the stock of the company, which has been paid up and for which certificates have been issued by the company,) excepting for the provisions of those sections. Then came the act of 1865, before referred to, the effect of which was to give to the city of Rochester the right to choose

seven, instead of four, directors of the railroad company; and the question is, did that impair, or would it, if enforced, impair the obligation of any contract? The legislature had already authorized one important change in the charter of the railroad company by changing the mode of choosing its directors. Had they the power to make another change? Most clearly they had. The 8th section of the title of the Revised Statutes referred to, declares that the charters of corporations shall be subject to alteration, &c. *in the discretion of the legislature.* It is evident, under this general language, that the power thus reserved was intended to be continuous, and not limited to a single or any number of occasions of its exercise when the power shall become or be deemed exhausted. Our volumes of session laws abound with acts showing the repeated exercise of this power in individual cases. The Revised Statutes, as already stated, provide that the charter of every corporation granted by the legislature shall be subject to alteration, suspension and repeal in the discretion of the legislature; and the general railroad act declares, as also stated, that corporations formed under and in accordance with its provisions, shall be subject to that among other provisions of the Revised Statutes, namely: that the corporations formed under the general railroad act shall be subject to alteration, suspension and repeal in the discretion of the legislature. The franchises of every railroad corporation under the general railroad act, derive their existence and all their vigor from the enabling provisions of that act, and the corporation receives them subject to all its provisions, whether specified in the act itself or referred to as contained elsewhere. That is a part of the contract of the corporators, whether original or those who come into the corporation after it has acquired its complete legal entity and gone into operation.

The franchises are granted and received, to be held and enjoyed subject to the right of the grantors, in their discretion to alter, suspend or take them back entirely. The legisla-

ture, in enacting the law of 1865 under consideration, altered the charter of the railroad company, by enlarging the powers of the city of Rochester, one of its stockholders, in the choice of the directors of the company. In doing this, no contract was impaired—only a reserved right was exercised, to which right the company must be deemed to have yielded its assent by accepting the franchises granted. It is plainly distinguishable from the case of a contract between the railroad company and a stranger, in relation to a matter having no connection with, or reference to, the organization of the company—for example, a contract between it and an individual for the purchase of a locomotive engine. In such a case there is a legal contract between two persons, an artificial and a natural one, the obligations of which, no state legislation could impair. But the case under consideration is where the legislature undertakes, in the exercise of its reserved powers, to alter fundamentally the articles of association or charter of the railroad corporation. This power I have shown, I think, it possesses. To regard the transaction in any other light would be, as it seems to me, to deny to the legislature any control over any and every railroad corporation organized under the general railroad act.

It is further insisted on behalf of the defendant, that the act in question is void for non-compliance with section 16 of article 3 of the constitution of this state, which declares that "no private or local bill, which may be passed by the legislature, shall embrace more than one subject, and that shall be expressed in the title."

This objection we think can not prevail. Assuming that the act is either private or local, it embraces only one subject. This is not controverted by the defendant. The point of the objection taken is, that the subject is not expressed in the title. The title, as before stated, is—"An act to amend chapter 389 of the Laws of 1851." The subject of the act in question is therefore expressed in the title, namely: to amend chapter 389 of the Laws of 1851, and comes within

the letter of the constitutional requirement. But it is said the statement in the title fails to indicate the nature of the amendment intended to be made, or what section or portion of the act to be amended is to be affected. We think such particularity was not contemplated by the section of the constitution referred to. Such has not been the practical construction by the legislature of that instrument, since its adoption, as by reference to the volumes of the session laws since that time will abundantly appear. In the Laws of 1848 there will be found between fifty and sixty, and in those 1858 some eighty chapters of acts, quite as local or private as the one under consideration, all of which would be obnoxious to the same objection as the one we are considering. The laws of the two years mentioned are referred to as affording fair specimens of the whole series of the volumes of the session laws since the adoption of the present constitution, and it is not believed that any one of these have met with judicial condemnation upon the ground now urged. All that is urged against the act in question in this respect is that the title is not sufficiently definite in expressing the subject. On that question the constitution is silent, evidently intending it to be left to the courts to determine, and to give such a construction to such private or local acts coming under review as shall prevent the mischiefs which the provision in question was intended to remedy. It clearly does not require that the titles of such acts should contain the substance of their enactments. A majority of the local or private acts of the legislature referred to, are entitled as acts amending other acts, without stating or indicating in what such amendments consist, or what section or provision of the amended acts are to be affected, or in what respect they are to be amended. The title of the act under consideration is of the same character. They are all sufficient to put the legislature and persons interested upon inquiry, which is all the constitution requires. Any thing beyond

this would require a statement in the title of the substance of the enactment.

For the foregoing reasons we are of the opinion that the judgment should be reversed, and a new trial granted, with costs to abide to event.

Ordered accordingly.

