THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent, v. THE TWENTY-THIRD STREET RAILWAY COMPANY, Appellant.

The act of 1873 (Chap. 647, Laws of 1873), requiring the B. S. & F. F. R. R. Co., a street railroad corporation organized under the General Railroad Act (Chap. 140, Laws of 1850), to pay into the treasury of the city of New York one per cent of the gross receipts instead of a license fee as before prescribed (Chap. 199, Laws of 1873), is constitutional; it must be deemed an alteration and amendment of the charter of the company, and so is within the power reserved to the legislature by the general act, the provisions of the Revised Statutes to which corporations organized under said act are by its terms made subject and the state Constitution. (Art. 8, § 1.)

While under the power so reserved the legislature cannot deprive a corporation of its property or annul its contracts with third persons, it may take away its franchise to be a corporation, or prescribe the conditions and terms upon which it may live and exercise such franchise.

The said company leased its property rights, privileges and franchises to the defendant. There was nothing in the lease imposing upon the lessee the obligation to pay the percentage. In an action to compel such payment, *held*, that, while no such obligation was imposed by the acts authorizing said company to lease its road (Chap. 199, Laws of 1873; chap. 389, Laws of 1875) or by any statute, defendant upon taking the place of its lessor, as to its charter rights and power, took its place also, as to its charter obligation and duties, and was not entitled to exercise the former without discharging the latter; and that, therefore, the action was maintainable.

Reported below, 48 Hun, 552.

(Argued March 21, 1889; decided April 16, 1889.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made May 24, 1888, which denied a motion to set aside an interlocutory judgment herein and for a new trial, made pursuant to section 1001 of the Code of Civil Procedure.

This action was brought to compel defendant, as lessee of the Bleecker Street and Fulton Ferry Railroad Company, to account and to pay over to the city one per cent of its gross receipts from the operation of the leased road. The interlocu-

tory judgment adjudged plaintiff to be entitled to the relief sought and directed an accounting.

The material facts are stated in the opinion.

*Leslie W. Russell* for appellant. A tenant or a sub-tenant is not bound to pay taxes and assessments unless he assumes them. (*Van Rensselaer* v. *Dennison*, 8 Barb. 23; *Collins* v. *Hasbrouck*, 56 N. Y. 157.) The plaintiff has no standing as a creditor to follow the assets of the Bleecker Street Company into the hands of the defendant. (*People* v. *Fire Assn. of Phila.*, 92 N. Y. 311; *People* v. *Home Ins. Co.*, Id. 328.) The act (chap. 647, Laws of 1873) did not create a corporation. The grant was to twelve men and their assigns. There was no right of succession in a corporate sense. The rights of any one of the grantees would have passed on his death to his personal representatives. (*White* v. *Miller*, 71 N. Y. 118, 126; *In re Kerr*, 42 Barb. 119; *New Orleans* v. *Delamore*, 114 U. S. 501; *Memphis Co.* v. *Commissioners*, 112 id. 609.)

*Thomas Allison* for respondent. The language of the statutes is not to be interpreted literally, but the intention of the legislature thereby expressed is to be sought for, and in case of any doubt or ambiguity the solution thereof is to be in favor of plaintiff. (*People ex rel. Wood* v. *Lacombe*, 99 N. Y. 43, 49, 54; *People ex rel. Twenty-third Street R. R. Co.* v. *Comrs. of Taxes*, 95 N. Y. 558; *Burch* v. *Newbury*, 10 id. 389; *O. S. F.* v. *Dalloway*, 21 id. 461; *People* v. *N. Y. C. R. R. Co.*, 13 id. 78; *Donaldson* v. *Wood*, 22 Wend. 397; *W. T. Co.* v. *McKean*, 6 Hill, 619; 3 Bing. 193; *Comm.* v. *Kimball*, 24 Pick. 370; *Mayor, etc.,* v. *B., etc., R. Co.*, 97 N. Y. 281.) The plain intent of the legislature was that in return for the use of the streets for this railroad the city should receive "one per cent of" not on "the gross receipts" from the exercise of the franchise. (*B. & S. A. R. R. Co.*, 97 N. Y. 275; 17 Hun, 242; 28 id. 323.) The legislature had power to impose upon the Bleecker Street and

Fulton Ferry Railroad Company the liability to pay to the city this percentage of their gross receipts. (*Mayor, etc.,* v. *D. D., E. B. & B. R. R. Co.,* 112 N. Y. 137; *Miller* v. *People,* 15 Wall. 478, 479; *People* v. *Hills,* 46 Barb. 344; *Tomlinson* v. *Jessup,* 15 Wall. 454; *S. & S. P. R. Co.* v. *Thacher,* 11 N. Y. 102; *B. & N. Y. C. R. R. Co.* v. *Dudley,* 14 id. 336; *In re Oliver Lee & Co.'s Bk.,* 21 id. 9; *A. N. R. Co.* v. *Brownell,* 24 id. 345, 350.) Though the reserved power of the legislature to alter and modify corporate charters is not limited to acts which shall not be injurious to the corporation, yet the corporation cannot complain of an act not shown to be injurious to it. (*S. & S. P. R. Co.* v. *Thacher,* 11 N. Y. 102.) The presumption is that the company itself procured the passage of the very act now in controversy. Especially is this so in view of the absence of any proof that it was injurious to the company when passed, and the strong probability that it was then beneficial to it. (*Mayor, etc.,* v. *B., etc., R. R. Co.,* 97 N. Y. 275, 281; *Mayor, etc.,* v. *D. D., E. B. & B. R. R. Co.,* 112 id. 137.)

EARL, J. By chapter 514 of the Laws of 1860, Steven R. Roe and others were authorized and empowered to "lay, construct, operate and use a railroad with a double or single track, as hereinafter provided, and to convey passengers thereon for compensation through, upon and along" the streets mentioned. Some time prior to the 12th day of December, 1864, the Bleecker Street and Fulton Ferry Railroad Company was organized under the general railroad act of 1850, and the several acts amendatory thereof; and the route of its railroad, as set forth in its articles of association, was the same as that over which Roe and others, named in the act of 1860, were authorized to construct and operate a railroad. On the 12th day of December, 1864, all the rights, privileges and franchises conferred upon Roe and others by the act of 1860, were assigned and transferred by them to, and the same became vested in, the Bleecker Street and Fulton Ferry Rail-

road Company. By the act chapter 199 of the Laws of 1873, the railroad company was authorized and empowered to extend its railroad, and by section 3 of that act it was, among other things, enacted as follows :

"In the construction, use and operation by the said company of the tracks and extensions authorized by this act, the company shall have and exercise the same rights and privileges which are now possessed and exercised under former grants and laws, and may use said road in connection with the roads of other railroad companies in said city, upon such terms as may be agreed upon between said companies and other railroad companies, and said company is hereby authorized to lease all or any portion of their said road, or to consolidate the same with any other railroad companies. The said company shall pay to the corporation of the city of New York a license fee of fifty dollars for each and every car used by them on said extensions."

A little more than a month later the legislature passed the act chapter 647 of the laws of that year, which is as follows :

"The Bleecker Street and Fulton Ferry Railroad Company, of the city of New York, shall in lieu of the payment to the corporation of the city of New York of a license fee of fifty dollars for each and every car used by said company, specified in section 3 of chapter one hundred and ninety-nine of the Laws of 1873, annually, on the first day of October, pay into the treasury of the city of New York, one per cent of the gross receipts of said company, the amount of which gross receipts shall be determined by the sworn statement of the president and treasurer of said company, but subject to the inspection of their books by the comptroller of said city, provided, however, that said payment of one per cent shall not commence to be computed until October first, in the year eighteen hundred and seventy-five, unless the extension of said railroad granted by chapter one hundred and ninety-nine of the Laws of eighteen hundred and seventy-three, shall be completed and in operation prior to said date; and in such case, then said computation of one per

cent shall commence from the date of said completion and operation of said extension of said railroad."

By the act chapter 369 of the Laws of 1875, any railroad company was authorized to take a lease of all or part of the Bleecker Street and Fulton Ferry Railroad Company, provided the stockholders of that company, holding a majority of stock, assented thereto. On the 10th day of January, 1876, the Bleecker Street and Fulton Ferry Railroad Company, as party of the first part, duly executed and delivered to the defendant, the Twenty-third Street Railroad Company, as party of the second part, a lease, whereby it demised and leased to the defendant, its successors and assigns, the railroad of the party of the first part, and the extensions thereof, "which the party of the first part is authorized to construct, together with all the property, real and personal, pertaining to and connected with said railroad and extensions, except its depot and stable grounds and premises held under lease from the mayor, aldermen and commonalty of the city of New York, and the buildings thereon, now in use by the party of the first part; also all cars, horses, harness and rolling stock; also the rights, licenses and privileges of the party of the first part, possessed and enjoyed under and by virtue of chapter 514 of the Laws of 1860, and chapter 199 of the Laws of 1873, and chapter 389 of the Laws of 1875, and of any and every act passed and to be passed amendatory thereof; to have, use and hold the right and interest of the party of the first part in all and singular the above demised premises, property, estate, effects, privileges, licenses and immunities aforesaid unto the party of the second part, its successors and assigns, from the day of the date hereof, for and during the term of ninety-nine years, yielding and paying therefor unto the party of the first part, its successors or assigns," in addition to a present consideration of $50,000, to be applied towards liquidating the floating debt of the party of the first part, an annual rent as follows: An annual dividend of one and one-half of one per cent upon the capital stock of the party of the first part, "it being understood that the dividends to be paid as aforesaid shall

and may be paid directly to the respective stockholders," and " semi-annually the interest accruing and to become due and payable from and after the 1st day of July, 1876, upon $700,000 of first mortgage bonds, made by the party of the first part and now outstanding." It was further provided that the party of the first part should, during the continuance of the lease, retain and keep its organization, and also as follows : " And the party of the first part also covenants and agrees that, upon the request of the party of the second part, it will execute to any railroad company a lease of any portion of the railroad, or extension, or property herein referred to, on such conditions as the party of the second part may propose, or that it will join the said party of the second part in such leases."

Under and pursuant to the lease, the defendant, on or about September 29, 1876, entered upon the demised property, but it has operated only a portion of the road demised, the remainder thereof having been leased to and operated by other companies. A demand has frequently been made upon defendant and upon the Bleecker Street and Fulton Ferry Railroad Company for the statement required by the act, chapter 647 of the Laws of 1873, and for the payment of the percentage specified in that act; but such statement and payment have been refused although the gross receipts from the exercise and operation by the defendant of the franchises and of the railroad have been very large. The courts below have held that the act chapter 647 of the Laws of 1873 was a constitutional exercise of legislative power, and that the defendant is liable to pay the one per cent of the gross receipts as therein specified. It is claimed on behalf of the defendant that the act chapter 647 of the Laws of 1873 is unconstitutional, and imposed no obligation upon the Bleecker Street and Fulton Ferry Railroad Company to pay the percentage therein specified.

Section 1 of the act, chapter 140 of the Laws of 1850 (the General Railroad Act), provides that the corporations organized under that act shall be subject to the provisions contained in

title 3 of chapter 18 of the first part of the Revised Statutes ; and among the provisions therein contained is this : " The charter of every corporation that shall hereafter be granted by the legislature shall be subject to alteration, suspension or repeal in the discretion of the legislature." Section 48 of that act also provides that "the legislature may at any time annul or dissolve any incorporation formed under this act ; " and section 1 of article 8 of the Constitution provides that " Corporations may be formed under *general* laws, but shall not be created by special act, except for municipal purposes, and in cases where, in the judgment of the legislature, the objects of the corporation cannot be obtained under general laws. All general laws and special acts passed pursuant to this section may be altered from time to time or repealed." Under the power reserved in these acts and the Constitution, the legislature was clothed with authority to require the payment of the percentage specified in the act chapter 647. That act was an exercise of legislative authority, and must be deemed to be an alteration and amendment of the charter of the Bleecker Street and Fulton Ferry Railroad Company. It is difficult to put precise limits upon the power of the legislature thus reserved over corporations created by it or under its authority. Under its reserved power it cannot deprive a corporation of its property, or interfere with, or annul its contracts with third persons. (*People* v. *O'Brien,* 111 N. Y. 1.) But it may take away its franchise to be a corporation, and may regulate the exercise of its corporate powers. As it has the power utterly to deprive the corporation of its franchise to be a corporation, it may prescribe the conditions and terms upon which it may live and exercise such franchise. It may enlarge or limit its powers, and it may increase or limit its burdens. It is sometimes said that the alteration under such reserved power must, however, be reasonable, and it must always be legislative in its character, and consistent with the scope and objects of the corporation as it was originally constituted. Here, in the first instance, by the act chapter 199 of the Laws of 1873, a license fee of $50 for each car was

considered a sufficient compensation to the city for the valuable franchise enjoyed by the corporation. But, on further consideration, the legislature concluded that it would be more convenient and beneficial to the city, and a fairer measure of the compensation which it should receive, that a percentage on the gross receipts should be paid. And this change the legislature was competent to make within every authority that can be found in the books. (Morawetz on Corporations, § 1093, et seq. ; Tomblinson v. Jessup, 15 Wall. 454; Miller v. State, 15 id. 478; Farrington v. Tennessee, 95 U. S. 679; Sinking Fund Cases, 99 id. 700; Railway Company v. Philadelphia, 101 id. 528; Close v. Glenwood Cemetery, 107 id. 466; Spring Valley, etc., Co. v. Schottler, 110 id. 347; Parker v. Metropolitan R. R. Co., 105 Mass. 506; Mayor of Worcester v. Norwich, etc., R. R. Co., 109 id. 113; People ex rel. v. Hills, 46 Barb. 340; Schenectady & Saratoga Plank-Road Co. v. Thatcher, 11 N. Y. 102; Buffalo & N. Y. City R. R. Co. v. Dudley, 14 id. 336; In the Matter of Oliver Lee & Co.'s Bank, 21 id. 9; Albany Northern R. R. Co. v. Brownell, 24 id. 345; Railroad Co. v. Maine, 96 U. S. 499.)

We are, therefore, of opinion that the act referred to, requiring the Bleecker Street and Fulton Ferry Railroad Company to pay one per cent of its gross receipts to the city, was constitutional and valid ; and if that railroad company had continued to operate its road, an action to recover the percentage could have been maintained by the city against it.

But the further objection is made that this defendant, as the lessee of the Bleecker Street and Fulton Ferry Railroad Company, is not liable to pay the percentage mentioned. There is nothing in the terms of the lease which imposes this obligation upon it. What it is bound to do under the lease is expressly stipulated therein, and there is no stipulation or provision imposing upon it the duty or obligation to pay the percentage. There is nothing in the general laws of the state which imposes this burden upon the defendant as lessee. By chapter 199 of the Laws of 1873, the Bleecker Street and

Fulton Ferry Railroad Company was authorized to lease its road, or any portion of it; also, by chapter 389 of the Laws of 1875, any railroad company was authorized to take a lease of all or any portion of its railroad. But neither of those acts imposes upon the lessee any express obligation whatever; and we know of no general rule of law by which the defendant, as lessee, became obligated to pay this percentage exacted by the state from its lessor.

We cannot, therefore, find the defendant's obligation to pay this percentage in any particular language used in the lease or in any statute. But we think it may, nevertheless, be found in the essential relations existing between the defendant and the lessor corporation.

The gross receipts mentioned in the act of 1873, were the gross receipts of the Bleecker Street and Fulton Ferry Railroad Company received for fares upon its road. It could have no other receipts, and one per cent of those receipts it was bound to pay to the city of New York — not a sum equal to one per cent, but so much of the gross receipts. Hence it would receive one per cent of all the fares paid to it to and for the use of the city under the obligation to pay it to the city. This was a charter obligation. The entity called a corporation consists of the sum total of all its charter powers and rights, and all its charter obligations and duties; and such powers and rights cannot be effectually divorced from such obligations and duties. The latter are correlatives to the former, and constitute the consideration for the corporate franchises, and their performance may be exacted as a condition of corporate existence. Hence when the defendant took the property, rights, privileges and franchises of the Bleecker Street and Fulton Ferry Railroad Company, it took them burdened with its charter obligations. Taking the place of that company as to its charter powers and rights, it necessarily took its place as to its charter obligations and duties. It could not have and exercise the former without discharging the latter. A *quasi* public corporation without any charter duties is inconceivable; and so it is incon-

ceivable that anyone could acquire by acts *in pais* the charter rights without at the same time assuming the charter duties. We, therefore, find in the acts authorizing the lease, and in the terms of the lease and the essential character of the lessor corporation, enough to impose upon the defendant the obligation to pay the percentage claimed. When the defendant took the place of the lessor corporation, it became obligated to take and retain one per cent of the fares received by it to and for the use of the city, and to make payment thereof to the city.

The order should be affirmed, with costs.

All concur.

Order affirmed.