McKEE v. CHAUTAUQUA ASSEMBLY et al.

(Circuit Court of Appeals, Second Circuit. April 20, 1904.)

No. 142.

1. CORPORATIONS—POWERS OF DIRECTORS—RIGHTS OF STOCKHOLDERS.

As to all matters of management and control within the scope of the powers delegated to the trustees or directors of a corporation by its charter, the affairs of the corporation are committed to their judgment and discretion, and the courts cannot sit in review of their errors at suit of the stockholders.

2. SAME—AMENDMENT OF CHARTER—RESERVED POWER OF LEGISLATURE.

Under power reserved to a Legislature to amend, annul, or repeal the charter of a corporation, it may make any alteration or amendment which will not defeat or substantially impair the object of the grant or any rights vested under it.

3. SAME.

While a reservation to the Legislature, in the charter of a corporation, of the power to annul or repeal such charter, cannot be used to take away property of the corporation, the action of the Legislature in consolidating a corporation with others organized for different purposes, and requiring it to assume their liabilities, is not invalid under such rule, but is within the reserved power, where, by the charters of such other corporations, they have always been under the sole management and control of its own board of trustees; the consolidation in such case being only a legislative recognition of the existing relations between them.

4. SAME.

The alteration or amendment of the charter of a corporation by the Legislature, within power reserved by the grant, does not require submission to the stockholders for their acceptance.

Appeal from the Circuit Court of the United States for the Western District of New York.

For opinion below, see 124 Fed. 808.

S. Schoyer, Jr., for appellant.

John G. Milburn, for appellees.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

WALLACE, Circuit Judge. The decree appealed from sustained a demurrer to the bill of complaint, and dismissed the bill. The action was brought by the complainant, as a member of Chautauqua Assembly, a corporation formed under the provisions of chapter 319, p. 447, of the Laws of New York of 1848, authorizing the organization of corporations for benevolent, charitable, scientific, and missionary purposes. Among other things, the bill prays relief as follows:

"That the merger and consolidation with said Chautauqua Assembly of the Chautauqua University and of the Chautauqua School of Theology, together with the assumption of all debts and liabilities of each of the said merged institutions by said Chautauqua Assembly, be declared null and void, and the said Chautauqua Assembly be enjoined and restrained from assuming any of the debts and liabilities of either of the same, or of making the work of the same, or of either, an integral part of said Chautauqua Assembly."

It appears by the bill that the objects of Chautauqua Assembly, as stated in its articles of association, were "to hold stated public meetings from year to year, at Fairpoint in the County of Chautauqua, State of New York, for the promotion of Sunday School interests, and any other moral and religious purposes not inconsistent therewith"; that since its organization it has acquired some 186 acres of land; that its membership consists of about 600 persons, including all persons having a lease of one or more of the lots upon such lands; and that the complainant, as one of such members, has erected upon his lot a cottage for a summer residence, and is entitled to all the rights and privileges which appertain to membership. The bill further sets forth that sundry grievances on the part of the members resulted in the appointment of a committee of three of their number to lay their complaints before the board of trustees; that a conference resulted between that committee and a committee of the board of trustees; and that, pending the adjustment of such differences, the board of trustees secured the passage by the Legislature of New York on March 21, 1902, of an act intended to defeat the claims of complaining members. Laws 1902, p. 496, c. 196. The act thus mentioned is entitled "An act to change the name, define the corporate objects and purposes, regulate the powers and government of the corporation Chautauqua Assembly, and to consolidate with said Chautauqua Assembly the Chautauqua University and the Chautauqua School of Theology." It changes the name of the corporation from "Chautauqua Assembly" to "Chautauqua Institution," and, among other provisions, contains the following:

"Sec. 2. The purpose and object of said corporation shall be to promote the intellectual, social, physical, moral and religious welfare of the people. To this end it may hold meetings and provide for recreation, instruction, health and comfort on its grounds at Chautauqua; conduct schools and classes; maintain libraries, museums, reading and study clubs and other agencies for home education; publish books and serials, and do such other things as are needful or proper to further its general purposes.

"Sec. 3. All debts and liabilities and all papers, records and other property (including the right to receive any gift, devise or bequest now or hereafter made) of Chautauqua University, a corporation chartered by chapter one hundred and forty-eight of the Laws of eighteen hundred and eighty-three, and of the Chautauqua School of Theology, a corporation chartered by chapter sixty-three of the Laws of eighteen hundred and eighty-one, both of which corporations are by chapters three hundred and eighty-seven and three hundred and eighty-eight, Laws of eighteen hundred and eighty-five, now under the sole control of the same trustees as said corporation Chautauqua Assembly, are hereby transferred to the corporation Chautauqua Institution, and the existence of the said Chautauqua University and the Chautauqua School of Theology as separate institutions is hereby terminated and their work is made an integral part of the work of Chautauqua Institution."

"Sec. 5. The government and control of said corporation shall be vested as heretofore in twenty-four trustees. The persons now acting as trustees shall be trustees for the terms for which they are respectively chosen * * * and until their successors are elected; those whose terms have expired shall be trustees until their successors are elected. The trustees shall be divided into Class A, consisting of twenty trustees who shall be elected by the trustees, and Class B, consisting of four trustees who shall be elected by the members of the corporation. The term of office shall be four years. Five of Class A and one of Class B shall be elected each year after 1902."

"Sec. 9. The trustees may by vote of two-thirds of their entire number alter or repeal the by-laws or enact new ones. * * * The sole power to enact, alter or repeal the by-laws shall be in the trustees. * * *"

The bill alleges that the board of trustees assumed authority to accept the provisions of the act of 1902, and, although the act has never been accepted by the members of the corporation, the trustees have proceeded, under color of said act, to use the amended name of "Chautauqua Institution," and have taken over and assumed the debts and liabilities of Chautauqua University and of the Chautauqua School of Theology, and have been and are carrying on the business of the said institutions as a part of the corporate business of said Chautauqua Institution, without any authority or assent from the members of Chautauqua Assembly, although the purposes and objects of each are entirely dissimilar from those of Chautauqua Assembly and from each other; that the purposes and objects of the Chautauqua School of Theology, as prescribed in the law of its organization, include the instruction of its patrons in historical and philosophical learning, and the departments which are usually taught in seminaries devoted to the training of candidates for the clerical profession, and also to provide an archæological library and museum, and a collection of books, manuscripts, charts, etc.; that the leading objects of Chautauqua University, as prescribed in the law of its organization, are to promote liberal and practical education, especially among the masses of the people, to teach the sciences, arts, languages, and literature, and give instructions embracing all departments of culture which the board of trustees may deem useful and proper, with power to grant diplomas and confer the usual university degrees; that, in carrying out the purposes of these two corporations, large expenses are incurrable for the services of instructors, teachers, lecturers, printing, etc.; that the assembly is without capital to prosecute the business of its department of theology or its university; that since the merger and consolidation of the corporations the Chautauqua Assembly has incurred large expenses for the support and maintenance of the business comprehended within the purposes of the other two corporations; that the continued support and maintenance thereof will be productive of great losses, and will threaten the continued existence of the corporation, and deprive the members of the benefits, privileges, and advantages resulting from membership therein, and will result in a serious depreciation of the property of lot-holding members of the corporation.

It is unnecessary to recapitulate the various averments of the bill which set forth the grievances complained of in the previous management of the corporation, or the prayers for relief founded upon them, and we have not referred to them in detail, because, unless the act of 1902 is unconstitutional, that act precludes the complainant from obtaining any relief in respect to those transactions. It is proper to say, however, that the averments in respect to the actions of the trustees in purchasing the capital stock of the "Chautauqua Press," in incurring indebtedness, and in creating a mortgage upon the property of the corporation, fail to show that the trustees trans-

cended their powers. The control and management of its affairs and funds were lodged by law with the trustees. They were expressly authorized to mortgage the property of the corporation upon obtaining the concurring vote of two-thirds of their members. Laws N. Y. 1895, p. 336, c. 559, § 13. The purchase of the stock of the Chautauqua Press was authorized. Laws N. Y. 1899, p. 326, c. 172. It is to be presumed, in the absence of any averment that two-thirds of the trustees did not concur, that the mortgage was properly created. In exercising the delegated power of managing its concerns for the common benefit of all the members of the corporation, the trustees were subject to the control of the membership, through its power to supersede them at recurring elections; and, if the trustees improvidently managed its affairs by incurring debts or otherwise, the remedy of the members was thus to supersede them. As to all matters of management and control within the scope of their powers, the affairs of the corporation were committed to their judgment and discretion, and the courts cannot sit in review of their errors.

Neither do we deem it necessary to discuss the contentions for the complainant that the act of 1902 contravenes the prohibitions of sections 16 and 18 of article 3 of the state Constitution, as it is entirely clear that these contentions are without merit. The real questions are whether the act is constitutional upon other considerations, and whether, if constitutional in part, some of its provisions are not nugatory without the consent of the corporation.

The power of the Legislature to amend, annul, or repeal the charter or articles of association of corporation was originally reserved by section 10, c. 319, p. 449, of the Laws of 1848, and was preserved when that chapter was remodeled by chapter 563, p. 1065, of the Laws of 1890. That power confers exceedingly wide discretion upon the Legislature, but it is not without limits. Diverse views as to its scope have been entertained by the tribunals of different jurisdictions, some of which treat it as authorizing much less radical changes than do others; but the authorities which should be regarded as controlling upon this court are the decisions of the highest courts of New York and of the Supreme Court of the United States. The decisions of these tribunals are practically in accord, and sanction the doctrine that the reserved power authorizes the Legislature to make any alteration or amendment of a charter which will not defeat or substantially impair the object of the grant, or any rights vested under it, and which the Legislature may deem necessary to promote the original purpose contemplated by its charter or articles of association, or to protect the rights of the public. In The Mayor v. Twenty-Third Street Railroad Co., 113 N. Y. 317, 21 N. E. 60, the Court of Appeals used this language:

"It is difficult to put precise limits upon the power of the Legislature thus reserved over corporations created by it under its authority. Under its reserved power it cannot deprive a corporation of its property, or interfere with or annul its contracts with third persons; but it may take away its franchise to be a corporation, and may regulate the exercise of its corporate powers. * * * It may enlarge or limit its powers, and it may increase or limit its burdens. It is sometimes said that the alteration under such reserve power must, however, be reasonable, and it must always be legislative in its char-

acter, and consistent with the scope and object of the corporation as it was originally constituted."

The Supreme Court of the United States in Schurz v. Cook, 148 U. S. 411, 13 Sup. Ct. 645, 37 L. Ed. 498, quoted from this decision, and added:

"This construction of the statutes of the state by its highest court is of controlling authority."

In Looker v. Maynard, 179 U. S. 46, 21 Sup. Ct. 21, 45 L. Ed. 79, the Supreme Court used this language:

"The effect of such a provision, whether contained in an original act of incorporation, or in a constitutional or general law subject to which a charter is accepted, is, at the least, to reserve to the Legislature the power to make any alteration or amendment of a charter subject to it which will not defeat or substantially impair the object of the grant, or any right vested under the grant, and which the Legislature may deem necessary to carry into effect the purpose of the grant, or to protect the rights of the public or of the corporation, its stockholders or creditors, or to promote the administration of its affairs."

Further citations of authority are unnecessary, and the validity of the act of 1902 is to be tested by the general principles announced in these decisions.

The changes introduced by section 2 (Laws 1902, p. 496, c. 196) are consistent with the original object of the corporation, and merely enumerate more specifically the "other moral and religious purposes" which by the articles of association were declared to be within the contemplation of the incorporators. The changes made by sections 5 and 9 in the mode of the selection of the trustees, in their tenure of office, and by investing in them exclusively the power of enacting by-laws, were clearly within the competency of the Legislature. Changes fully as radical as these in the mode of constituting the government of a corporation were upheld as within the reserved power of the Legislature in Miller v. The State, 15 Wall. 478, 21 L. Ed. 98, and Close v. Glenwood Cemetery, 107 U. S. 466, 2 Sup. Ct. 267, 27 L. Ed. 408. The changes of more doubtful validity are those made by section 3. The provisions of this section not only merge the corporation with two others, and thus embark it in new enterprises, but they compel it to assume the debts and liabilities of the corporations. Thus apparently these provisions appropriate the funds of the corporation, and divert them from its own treasury, to the extent necessary to pay the outstanding liabilities and carry on the operations of the other two corporations. If it were really the effect of these provisions to compel the corporation to embark its money improperly in one or more unrelated and independent concerns, the legislation would seem to be an unwarranted exercise of the power of alteration or amendment. As was said by Chief Justice Waite:

"All agree that it cannot be used to take away property already acquired under the operation of the charter, or to deprive the corporation of any funds actually reduced to possession under contracts lawfully made." Sinking Fund Cases, 99 U. S. 720, 25 L. Ed. 496.

It appears, however, that for several years previous to the passage of the act the three corporations had been practically one, and the

power of management had been submitted to Chautauqua Assembly. By chapters 387 and 388, pp. 631, 632, of the Laws of New York of 1885, the control and management of the property and affairs ·of Chautauqua University, and of the Chautauqua School of Theology, were vested in the board of trustees from time to time existing of the Chautauqua Assembly. Thus the members of Chautauqua Assembly, through the trustees selected from time to time, were in control of the other two corporations. Presumably the membership of the three corporations was composed of the same persons, but, however the fact may have been, it is not material; it suffices that no person had a voice in the control of the two corporations except the members of Chautauqua Assembly. In view of this relation between the three corporations, the validity of the legislation is not fairly open to question. The provisions of section 3 were merely a legislative recognition and approval of the existing relations between them. Concluding, as we do, that the act of 1902 was in all respects a constitutional exercise of the power of the Legislature to alter the organic law of Chautauqua Assembly, it is of no consequence that the trustees did not, by a corporate meeting or otherwise, obtain the assent to the changes of the members of Chautauqua Assembly. Such changes were sanctioned by the members in advance. Every member who enters into such an association is aware of the reservation of the power of the Legislature and of the possibility of its exercise, and must trust to the wisdom and justice of the Legislature that the power will not be abused; and those who become members contract subject to the reservation of power, and the courts are bound to read their agreement with the legislative condition. Schenectady & Saratoga Plank Road Co. v. Thatcher, 11 N. Y. 102, 114.

We have not adverted to the charges in the bill which in substance aver that the trustees have arrogated to themselves municipal functions and established police and health regulations over the territory included within the lands of the corporation. It does not appear from the bill that any specific wrong or injury to the complainant has resulted from these acts.

We find nothing in the bill which entitled the complainant to equitable relief, and are of the opinion that the court below properly dismissed the bill.

The decree is affirmed, with costs.